**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

APPROXIMATELY $565,603.38 SEIZED FROM ACCOUNT NO. 898114716227 AT BANK OF AMERICA HELD IN THE NAME OF PRINCE PROPERTY MANGEMENT INC.;

APPROXIMATELY $399,697.00 SEIZED FROM ACCOUNT NO. 3290399997 AT CITIBANK HELD IN THE NAME OF PRINCE PROPERTY MANAGEMENT INC.;

APPROXIMATELY $100,100.00 SEIZED FROM ACCOUNT NO. 898107163434 AT BANK OF AMERICA HELD IN THE NAME J & F PRINCE CORP.;

APPROXIMATELY $100,100.00 SEIZED FROM ACCOUNT NO. 898115813255 AT BANK OF AMERICA IN THE NAME OF J & F PRINCE CORP.;

APPROXIMATEY $300,000.00 SEIZED FROM ACCOUNT NO. 3290399942 AT CITIBANK HELD IN THE NAME OF J & F PRINCE CORP.;

APPROXIMATELY $425,164.54 SEIZED FROM ACCOUNT NO. 598058797 at J.P. MORGAN CHASE BANK, N.A., HELD IN THE NAME OF CUBAS ENTERPRISE LLC;

APPROXIMATELY $99,875.00 SEIZED FROM ACCOUNT NO. 898115710358 AT BANK OF AMERICA HELD IN THE NAME OF CUBAS ENTERPRISE LLC; and

APPROXIMATELY $247,130.98 SEIZED FROM ACCOUNT NO. 107369057 AT J.P. MORGAN CHASE BANK, N.A. HELD IN THE NAME OF EPIC CONSTRUCTION AND DEVELOPMENT CORP.

    **Defendants** *In Rem*.

1

## **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States allege as follows:

**I.  NATURE OF THE ACTION**

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(A), (C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as (collectively, the "**Defendant Assets**"):

   i. Approximately[1] $565,603.38 seized from account number 898114716227 at Bank of America held in the name of Prince Property Management, Inc. ("**Defendant Account 1**");

   ii. $399,697.00 seized from account number 3290399997 at Citibank held in the name of Prince Property Management, Inc. ("**Defendant Account 2**");

   iii. $100,100.00 seized from account number 898107163434 at Bank of America held in the name of J & F Prince Corp. ("**Defendant Account 3**");

   iv. $100,100.00 seized from account number 898115813255 at Bank of America held in the name of J & F Prince Corp. ("**Defendant Account 4**");

   v. $300,000.00 seized from account number 3290399942 at Citibank held in the name of J & F Prince Corp. ("**Defendant Account 5**");

   vi. $425,164.54 seized from account number 598058797 at J.P. Morgan Chase Bank, N.A., held in the name of Cubas Enterprise LLC ("**Defendant Account 6**");

   vii. $99,875.00 seized from account number 898115710358 at Bank of America held in the name of Cubas Enterprise LLC ("**Defendant Account 7**"); and

   viii. $247,130.98 seized from account number 107369057 at J.P. Morgan Chase Bank, N.A. held in the name of Epic Construction and Development Corp. ("**Defendant Account 8**").

---

[1] All dates and amounts referenced in this Verified Complaint are approximate.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Assets. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Assets were brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395; 18 U.S.C. § 981(h).

## III. FACTUAL ALLEGATIONS

At all times material to this Action:

### A. Overview of Paycheck Protection Program

5. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

6. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small

businesses, including sole proprietorships, for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8.      To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483-C), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

9.      A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA.  Data from the application, including information about the borrower and the total amount of the loan, was transmitted by the lender to the SBA in the course of processing the loan.

10.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll costs.

**B. Relevant Individuals and Entities**

11. The following individuals, among others, obtained PPP loan disbursements, either directly or indirectly, which contained materially false and fraudulent information (collectively, the "Subject Individuals"):

   i. Hasan Hakim Brown ("H. Brown");

   ii. Arielle Mansaw ("Mansaw");

   iii. Individual 1;

   iv. Individual 2; and

   v. Individual 3.

12. At times, the Subject Individuals applied for PPP loans through synthetic identities. A synthetic identity is a fake identity created by combining fabricated and true personal identifying information ("PII") to make a new identity. For example, an individual using a synthetic identity may submit an application to open a bank account using a true name and address belonging to a real person but use a fake or stolen social security number. As described further below, some of the names of the synthetic identities used to obtain PPP loans containing materially false and fraudulent information include (collectively, the "Synthetic Identities"):

   i. Charles Brown ("C. Brown");

   ii. Deborah Sue Brown ("D. Brown")

   iii. Timothy Brown ("T. Brown")

   iv. Nicholas Carter ("N. Carter"); and

   v. Shannon Carter ("S. Carter").

13. The Subject Individuals controlled, either directly or through a synthetic identity,

the following businesses (collectively, "Subject Businesses"):[2]

| Entity Name | Officer/ Member | Place of Incorporation | Status at all Relevant Times |
|---|---|---|---|
| Advanced Financing Inc. ("AFI") | H. Brown | Aventura, FL | Active – Reinstatement filed 6/23/2020 |
| Carter Landscaping Services Inc. ("CLS") | N. Carter | Miami, FL | Active- 12/29/2018 |
| CBS Mobile Mechanics, Inc. ("CBS MM") | C. Brown | Miami, FL | Active - 10/11/2018 |
| Cubas Enterprise LLC ("C.E.") | Individual 2 | Wilton Manors, FL | Active - 1/14/2020 |
| Debs Housekeeping Services Inc. ("DHS") | D. Brown | Miami, FL | Active – 10/17/2018 |
| Epic Construction and Development Corp ("ECD") | Individual 3 | Miami, FL | Active - Reinstatement 6/22/2020 |
| J & F Prince Corp. ("JFP") | Individual 1 | Miami, FL | Active – Reinstatement filed 8/2/2019 |
| Post Commercial Property Management Inc. ("PCPM") | H. Brown | Aventura, FL | Active – Reinstatement filed 5/29/2020 |
| Prince Property Management Inc. ("PPM") | Individual 1 | Miami, FL | Active – Reinstatement filed - 8/2/2019 |
| Shan's Mobile Pet Grooming Inc. ("SMPG") | S. Carter | Naples, FL | Active – 12/29/2018 |
| TB Team Landscaping Inc. ("TB TL") | T. Brown | Miami, FL | Active – 10/22/2018 |
| Tech Savvy Holding Corp. ("TSH") | H. Brown | Aventura, FL | Active – Reinstatement filed 11/4/2016 |
| Y.E.N. Global LLC ("YEN G") | Mansaw | North Miami, FL | Active – Reinstatement filed 2/28/2018 |

---

[2] Law enforcement obtained the information contained in the chart below from the Florida State Division of Corporations.

### C. The Lending Banks

14. Financial Institution 1 and Financial Institution 2 were financial institutions federally insured by the Federal Deposit Insurance Corporation. Financial Institution 1 was a New Jersey state-chartered bank with branches throughout the United States. Financial Institution 2 was based out of Salt Lake City, Utah with branches throughout the United States. Financial Institution 1 and Financial Institution 2 participated in the SBA's PPP as lenders and, as such, were authorized to lend funds to eligible borrowers under the terms of the PPP.

15. Financial Institution 1 and Financial Institution 2 were small business lenders that were approved by the SBA to authenticate and fund loan agreements under the CARES Act. An authorized representative of the business would begin the process by filling out an application. Then, the loan would be processed pending approval from the SBA. Once approved, the lending banks would disburse the funds into the registered bank account associated with the business.

### D. Overview of the Scheme

16. Law enforcement has been investigating the Subject Individuals and Subject Businesses for PPP loan fraud and money laundering. In order to obtain PPP loans, the Subject Individuals claimed their companies paid tens of millions of dollars in payroll when in fact bank records obtained by law enforcement showed minimal to no payroll payments by all the Subject Businesses. In total, at least nine PPP loan applications were submitted on behalf of the Subject Businesses and approved. As a result, at least $8,622,960.00 was disbursed to various bank accounts as described further below.

17. Instead of funding payroll, bank records show that the Subject Individuals quickly transferred the money to other accounts controlled by them and their co-conspirators, using checks,

wire transfers, ACH payments,[3] and Zelle payments,[4] among other methods, to do so. The evidence shows that these transfers were made in an effort to conceal the nature, source, location, ownership, and control of falsely and fraudulently obtained PPP loan disbursements.

E.  **False Statements on PPP Loan Applications**

18.  Law enforcement has obtained and reviewed PPP loan applications submitted on behalf of the Subject Businesses. On each of the loan applications, the Subject Individuals, either directly or through a synthetic identity, identified themselves as the owner and authorized representative of the applicant subject business. Below is a summary of the information contained in those PPP loan applications:

| Subject Business | Submitted on | Submitted to | # of Employees Claimed | Amt sought | Claimed avg monthly payroll |
|---|---|---|---|---|---|
| CLS | 5/11/2020 | Financial Institution 2 | 200 | $1,707,120 | $682,848 |
| CBS MM | 5/20/2020 | Financial Institution 2 | 95 | $1,816,625 | $726,650 |
| CE | 5/11/2020 | Financial Institution 1 | 32 | $694,721 | $277,888 |
| DHS | 5/9/2020 | Financial Institution 1 | 72 | $1,413,157 | $565,263 |
| ECD | 5/5/2020 | Financial Institution 2 | 15 | $438,132 | $175,253 |
| SMPG | 5/7/2020 | Financial Institution 1 | 64 | $830,445 | $332,178 |
| TB TL | 5/6/2020 | Financial Institution 2 | 47 | $660,295 | $264,118 |
| TSH | 5/6/2020 | Financial Institution 2 | 33 | $544,650 | $217,860 |
| YEN G | 5/7/2020 | Financial Institution 2 | 43 | $517,815 | $207,126 |

---

[3] ACH transfers are a type of electronic funds transfers similar to wire transfers, but not as rapid.

[4] Zelle is a digital payment network that enables individuals to electronically transfer money from their bank account to another user's bank account.

19.     Records show that there were numerous false representations on the PPP loan applications. First, as set forth in the above table, the PPP loan applications claimed that the Subject Businesses employed between 15 to 200 employees. The Department of Revenue for the State of Florida ("Florida Department of Revenue")[5] requires Florida companies to report wages paid to employees as part of the payment of reemployment tax. Law enforcement has reviewed records from the Florida Department of Revenue and confirmed that, as of July 2020, the Subject Businesses never filed any payroll taxes or any other tax document.

20.     Second, also set forth in the above table, the PPP loan applications each claimed that the Subject Business's monthly payroll was more than $100,000 per month. However, law enforcement reviewed numerous bank records for the Subject Businesses from January 2020 through May 2020, when the loan applications were submitted. Those bank records revealed that monthly inflows and outflows averaged around $10,000—far less than the amount of payroll represented in the PPP applications. Law enforcement was not able to identify any of payments or withdrawals as work or pay-related. Bank records instead show payments for personal expenses and transfers of funds between accounts owned and controlled by the Subject Individuals, including, but not limited to, the **Defendant Accounts**.

21.     Moreover, the PPP loan applications contained many false statements relating to the use of the PPP funds in his loan applications. For example, all PPP loan applicants electronically certified on each of the applications that:

All SBA loan proceeds will be used only for business-related purposes ….

The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments … I understand that if the funds

---

[5] The Florida Department of Revenue is a state-level agency that provides services to millions of individuals, businesses, and families throughout Florida, including general tax administration, child support services and property tax oversight.

>are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud….

As further detailed below, the loan proceeds were not immediately diverted for unauthorized uses.

22. Further, the PPP loan applications contained false tax documents that claimed the Subject Businesses paid tens of millions of dollars in payroll by using incomplete and false information describing the four fiscal quarters in 2019 and 2020. State Department of Labor records and bank records, however, showed little to no payroll expense during this period.

23. Additionally, law enforcement was able to determine that the loan applications submitted on behalf of CLS, CBS MM, DHS, SMPF, and TB TL were submitted by synthetic identifies. Law enforcement was able to determine that C. Brown, D. Brown, T. Brown, N. Carter and S. Carter (collectively, "Synthetic Identities") were synthetic identities by reviewing information obtained from the Social Security Administration. Based on information obtained by the SSA, law enforcement was able to determine that the social security numbers listed in bank records did match up to names and other identifiers for the social security numbers. For example, the social security number used in bank accounts purportedly opened by N. Carter belonged to Individual 4, an individual who resided in San Diego California and was 16 years old in May 2020.

F. **Disbursement of PPP Loans and Subsequent Transfers**

24. Attachment 1 is a visual depiction of the flow of funds through the **Defendant Accounts** as well as other accounts that received PPP loan disbursements. As show in Attachment 1 and further described below, the PPP loan disbursements obtained based on the false and fraudulent PPP loan applications described above were disbursed to and transferred between various accounts controlled by the Subject Individuals, including the **Defendant Accounts**.

25. In May 2020, Financial Institution 1 and Financial Institution 2 made the following loan disbursements to the Subject Businesses based on the PPP loan applications described above, which contained materially false and fraudulent information:

| Date | Account | Amount | Prior Balance |
|---|---|---|---|
| 5/7/2020 | Acct # 1823721129 at Wells Fargo Bank, N.A. in the name of TSH ("WF *1129") | $544,650.00 | $29,371.23 |
| 5/8/2020 | Acct # 1100018318707 at Truist Bank in the name of TB TL ("Truist *8707") | $660,295.00 | $48.00 |
| 5/8/2020 | Acct # 550885276 at J.P. Morgan Chase Bank, N.A. in the name of YEN G ("JPMC *5276") | $517,815.00 | $14,026.65 |
| 5/11/2020 | **Defendant Account 8** | $438,132.00 | $2,180.48 |
| 5/11/2020 | Acct # 1100018454279 at Truist Bank in the name of SMPG ("Truist *4279") | $830,445.00 | $80.00 |
| 5/12/2020 | Acct # 1100018455240 at Truist Bank in the name of CLS ("Truist *5240") | $1,707,120.00 | $80.00 |
| 5/12/2020 | **Defendant Account 6** | $694,721.00 | $3,874.64 |
| 5/12/2020 | Acct # 1100018318677 at Truist Bank in the name of DHS ("Truist *8677") | $1,413,157.00 | $524.42 |
| 5/21/2020 | Acct # 6767933833 at Azlo Bank in the name of CBS MM ("Azlo *3833") | $1,816,625.00 | $200.00 |

26. After loan disbursements were deposited into the accounts described above, the following transfers, among others, were made to the following accounts:

| Date | Debit Account | Credit Account | Amount |
|---|---|---|---|
| 5/15/2020 | WF 1129 | Acct # 451336445 at J.P. Morgan Chase Bank, N.A. in the name of PCPM ("JPMC *6445") | $54,465.00 |
| 6/3/2020 | Truist *8707 | **Defendant Account 1** | $100,000.00 |
| 6/8/2020 | Truist *8707 | **Defendant Account 4** | $100,000.00 |
| 6/9/2020 | Truist *8707 | **Defendant Account 2** | $100,000.00 |
| 5/11/2020 | JPMC *5276 | JPMC *6445 | $13,000.00 |
| 5/18/2020 | JPMC *5276 | JPMC *6445 | $51,726.88 |
| 5/26/2020 | **Defendant Account 8** | JPMC *6445 | $54,750.00 |
| 6/17/2020 | Truist 4279 | **Defendant Account 5** | $200,000.00 |
| 6/1/2020 | Truist 5240 | WF *1129 | $48,500.00 |
| 6/10/2020 | Truist 5240 | WF *1129 | $20,000.00 |
| 6/16/2020 | Truist 5240 | **Defendant Account 2** | $200,000.00 |
| 5/26/2020 | **Defendant Account 6** | JPMC *6445 | $43,420.00 |

| Date | Debit Account | Credit Account | Amount |
|---|---|---|---|
| 6/10/2020 | **Defendant Account 6** | **Defendant Account 7** | $100,000.00 |
| 6/11/2020 | Truist *8677 | **Defendant Account 3** | $100,000.00 |
| 6/12/2020 | Truist *8677 | **Defendant Account 2** | $100,000.00 |
| 5/28/2020 | Azlo *3833 | **Defendant Account 1** | $100,000.00 |
| 6/3/2020 | Azlo *3833 | **Defendant Account 1** | $100,000.00 |
| 6/8/2020 | Azlo *3833 | **Defendant Account 1** | $100,000.00 |
| 6/11/2020 | Azlo *3833 | **Defendant Account 1** | $150,000.00 |
| 5/20/2020 | JPMC *6445 | Acct # 109125980 at J.P. Morgan Chase Bank, N.A. in the name of AFI ("JPMC *5980") | $83,451.84 |
| 5/22/2020 | JPMC *5980 | **Defendant Account 1** | $41,725.42 |

**G. Related Proceedings**

27. The contents of all accounts referenced in this Complaint, including the **Defendant Assets**, were all previously seized by seizure warrants issued by the Honorable Magistrate Judge Alicia M. Otazo Reyes. *See* 1:20-MJ-03478-AOR; 1:20-MJ-03480-AOR; 1:30-MJ-03481-AOR; 1:20-MJ-03882-AOR; 1:20-MJ-03883-AOR; 1:20-MJ-03885-AOR. Upon seizure, the **Defendant Assets** were brought to the Southern District Florida, and they are currently in the custody of the United States Secret Service.

28. Additionally, as described more fully below, H. Brown and Mansaw were convicted and sentenced in the Southern District of Florida based on the conduct described above.

| Defendant | Criminal Case # | Sentence | Restitution |
|---|---|---|---|
| H. Brown | 21-CR-20262-AHS | 60 months | $20,832,052.65 |
| Mansaw | 22-CR-20369-CMA | four months | $372,658.00 |

29. The seized contents of WF 1129, Truist *8707, JPMC *5276, Truist 4279, Truist 5240, Truist *8677, Azlo *3833, JPMC *6445, and JPMC *5980 have all been criminally forfeited to the United States in 21-cr-20262-AHS and 22-cr-20369-CMA. *See* Notices on Final Forfeiture, ECF No. 108 (21-cr-20262-AHS) and ECF No. 42 (23-cr-20369-CMA).

30. Individual 1 has been indicted in an under-seal indictment in the Southern District of Florida related to the conduct described above. Those charges are pending.

    **H. Conclusion**

    31.    Based on the above, the **Defendant Assets** represents proceeds of a PPP loan fraud scheme and/or property involved in money laundering. To the extent that any portion of the **Defendant Assets** are not directly traceable to fraudulently obtained PPP loan disbursements, such funds represent moneys that have been commingled with fraud proceeds to conceal the nature source, ownership, location, or control of the illicitly derived proceeds.

**IV.**    **LEGAL BASIS FOR FORFEITURE**

    32.    Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a "specified unlawful activity," is subject to civil forfeiture. Pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1) wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344 each constitute a specified unlawful activity.

    33.    Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. § 1956], or any property traceable to such property" is subject to forfeiture to the United States.

## FIRST CLAIM FOR RELIEF
### Proceeds of Wire Fraud
### (18 U.S.C. § 981(a)(1)(C))

34. The factual allegations in paragraphs 1 to 33 are re-alleged and incorporated by reference herein.

35. As set forth above, the **Defendant Assets** constitute or were derived from proceeds traceable to a violation of 18 U.S.C. § 1343.

36. Accordingly, the **Defendant Assets** are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF
### Proceeds of Bank Fraud
### (18 U.S.C. § 981(a)(1)(C))

37. The factual allegations in paragraphs 1 to 33 are re-alleged and incorporated by reference herein.

38. As set forth above, the **Defendant Assets** constitute or were derived from proceeds traceable to a violation of 18 U.S.C. § 1344.

39. Accordingly, the **Defendant Assets** are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF
### Property Involved in Money Laundering or Traceable Thereto
### (18 U.S.C. § 981(a)(1)(A))

40. The factual allegations in paragraphs 1 to 33 are re-alleged and incorporated by reference as if fully set forth herein.

41. As set forth above, the **Defendant Assets** were involved in transactions or attempted transactions of an offense in violation of 18 U.S.C. § 1956, and/or constitute property traceable to such property.

42. Accordingly, the **Defendant Assets** are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**WHEREFORE**, Plaintiff, the United States of America, requests that any and all persons having any claim to the **Defendant Assets** be directed to file and serve their verified claims and answers as required by Rule G(5), of the Supplemental Rules for Certain Admiralty and Maritime Claims, or suffer default thereof, and further requests that the Court declare the **Defendant Assets** condemned and forfeited to the United States of America, and that Plaintiff have such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   /s/ Nicole Grosnoff
Nicole Grosnoff
Assistant United States Attorney
Court ID No. A5502029
nicole.s.grosnoff@usdoj.gov
U.S. Attorney's Office
99 Northeast Fourth Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9294
Facsimile: (305) 536-4089

**ATTACHMENT 1**



## **VERIFICATION**

I, David Brant, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Federal Deposit Insurance Corporation Office of Inspector General ("FDIC-OIG") and that the foregoing allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers and witnesses, as well as my investigation of this case, together with others, as a Special Agent of the FDIC-OIG.

Executed on this 2nd day of June 2025.

*David Brant*

_____
David Brant
Special Agent
Federal Deposit Insurance Corporation
Office of Inspector General